IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

A&C CATALYSTS, INC.,

        Plaintiff and Counter-Defendant,

  v.

RAYMAT MATERIALS, INC.,

        Defendant and Counter-Plaintiff.

                                              /

No. C 14-04122 WHA

**ORDER DENYING RULE 59(e) MOTION**

## INTRODUCTION

This action is a follow-on lawsuit over a busted settlement agreement resolving a prior lawsuit. After a three-day bench trial, lengthy findings of fact, conclusions of law, and an order for relief followed enforcing the settlement agreement. Now, defendant seeks to "amend" the judgment. For the reasons stated herein, the motion is **DENIED**.

## STATEMENT

The findings of fact recounted the history of this action so it will not be repeated herein (Dkt. No. 111). In brief, plaintiff A&C Catalysts Inc. and defendant Raymat Materials Inc. settled a prior lawsuit, also before the undersigned judge, regarding an exclusive supply agreement. In pertinent part, A&C Catalysts agreed to pay $150,000 to Raymat "to purchase Raymat's LL ["N'-Lauroyl-L-lysine"] manufacturing process, along with documentation of that process, in both English and Chinese" and eight hours of teleconferencing support time (Dkt. No. 20). The dispute boiled down to whether an eleven-page process description in Chinese (and the English translation thereof) sufficed. It did not, the Court ultimately held after a

three-day bench trial.  Now, Raymat moves to "amend" the judgment.  This order follows full briefing and oral argument.

## ANALYSIS

Raymat, unsatisfied with the outcome of the three-day bench trial by a district judge who presided over both lawsuits collectively spanning more than two years, now moves to "amend" the judgment.  After ruling on numerous discovery disputes, motions for summary judgment, a motion for civil contempt, and other motions, the Court received the parties' stipulation to dismiss the original lawsuit on the eve of trial.

Three months later, this satellite litigation erupted apparently when the settlement agreement unraveled.  It soon became clear that the parties could agree on little, if anything.  More discovery disputes arose and in light of the circumstances, the undersigned judge felt that the best course of action was to promptly proceed to trial before memories (and evidence) became stale.  The parties submitted pre-trial proposed findings and conclusions, a trial brief, motions *in limine*, *Daubert* motions, and post-trial proposed findings, conclusions, and responses.  After considering the evidence in the three-day trial record, lengthy findings of fact, conclusions of law, an order for relief, and judgment followed (Dkt. Nos. 111, 112).

Now, Raymat seeks to reverse the judgment.  Specifically, it seeks to "amend" the judgment under Rule 59(e) from stating "Judgment is hereby entered in favor of **A&C Catalysts, Inc.** to the extent stated in the findings of fact, conclusions of law, order for relief following bench trial, and referral to the Department of Justice" to stating "Judgment is hereby entered for **Raymat** against A&C Catalysts, Inc. in the amount of $150,000, plus 10% prejudgment interest accruing from August 29, 2014, at the rate of $41.10 per day" (emphases added).
This motion is **DENIED**.  Raymat's arguments are unavailing.

*First*, Raymat contends that the findings and conclusions rejected Raymat's repudiation theory without "discussing" decisions such as *Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*, 191 Cal. App. 4th 435, 467 (Cal. Ct. App. 2010), and *Fracasse v. Brent*, 494 P.2d 9, 17 (Cal. 1972), both cited in Raymat's post-trial proposed conclusions. Neither of those decisions was or is persuasive.

2

*Mammoth* involved a developer suing a town for anticipatory breach of a development agreement after the town refused to move forward with a development project in light of the Federal Aviation Administration's objections. The jury in *Mammoth* awarded $30 million to the developer after expressly finding, among other things, that the development had met all or substantially all of its obligations under the agreement. 191 Cal. App. 4th at 453. The California Court of Appeal affirmed. In pertinent part, it found sufficient evidence to establish that the town expressly repudiated the agreement. *Id.* at 467–69.

*Mammoth* is distinguishable because (1) the developer met all or substantially all of its obligations whereas Raymat's eleven-page process description was inadequate and (2) the town in *Mammoth* refused to move forward with the development agreement, stated in internal communications that it wanted to "get rid of" the developer's project (in favor of another project), and "actively sought to undermine" the developer's rights. Our trial record contained no such evidence. A&C Catalysts placed the $150,000 in escrow. Moreover, (3) the developer there spent more than $15 million on improvements after entry of the development agreement whereas Raymat insisted and still insists that all it had to do was turn over a "preexisting document," namely, the eleven-page process description in its actual possession at the time (Br. 17). *Mammoth*, 191 Cal. App. 4th at 447, 453, 449–50, 467, 469.

Raymat's reliance on dictum in the dissent in *Fracasse* is equally unavailing. *Fracasse* involved an attorney who was discharged without cause by his client and sued to recover fees. The majority held that a discharged attorney was entitled to recover the reasonable value of services rendered before the time of discharge, but the cause of action to recover compensation for services rendered under a contingency-fee agreement did not accrue until the occurrence of the stated contingency. 494 P.2d at 15. Justice Raymond Sullivan dissented. Neither the majority nor the dissent focused on repudiation. Nevertheless, Raymat cites Justice Sullivan's 1972 dissent for the proposition that one who is injured by a breach of contract may elect to pursue any of three remedies, one of which is to "treat the repudiation as putting an end to the contract for all purposes of performance, and [to] sue for the profits he would have realized if he had not been prevented from performing." *Id.* at 17. Here, however, Raymat was

3

not excused from performance merely because counsel for A&C Catalysts demanded physical equipment (Dkt. No. 111 at 13). This order rejects Raymat's argument that tendering performance was a "vain and idle ceremony" (Br. 8).

This order also rejects Raymat's reliance on the following sentence in *Pacific Coast Engineering Co. v. Merritt-Chapman & Scott Corp.*, 411 F.2d 889, 895 (9th Cir. 1969): "If the offeror is not asserting a good faith interpretation of the contract terms, that fact may be evidence that he is repudiating the agreement" (citing law review note). Procedurally, neither party cited this 1969 decision in the pre- and post-trial proposed conclusions and responses. Substantively, the order for relief did not excuse Raymat from performance based on opposing counsel's demands for physical equipment in pre-litigation emails.

On reply, Raymat resorts to arguing that because of the "page limits," it never had a chance to "fully" discuss the issue of repudiation (Reply 1). Raymat is wrong. After trial, the undersigned judge proposed a ten-page limit for opening submissions and a twenty-page limit for responses. Counsel for Raymat responded: "That's fine" (Trial Tr. 399). Neither side asked for a page extension. Counsel retained discretion over how to spend the allowed pages. Contrary to Raymat, no re-do is necessary because of "insufficient briefings earlier" (Reply 4).

***Second***, Raymat argues that the judgment must be amended because delivery of "Raymat's LL manufacturing process, along with documentation of that process" was not a condition precedent to payment. In other words, A&C Catalysts had an "independent obligation" (Raymat's phrase) to pay $150,000 by August 2014, even if Raymat did nothing (Br. 11–12). Counsel repeated this argument at oral argument today.

This argument is absurd. Raymat promised to deliver its "LL manufacturing process, along with documentation of that process." After Raymat tendered the eleven-page process description and after Raymat stated that it had "no other documentation or information," A&C Catalysts kept the $150,000 in escrow and sued. This reaction surprised no one considering the litigious history between these parties and their counsel. (In fact, the parties are still litigating Raymat's compliance with the order for relief.) The order for relief did not "entirely excuse" Raymat from performance based on A&C Catalysts' refusal to release the funds in escrow.

4

*Third*, Raymat argues that it "adequately performed." Now privy to where the chips have fallen after trial, Raymat argues that "usage of trade" is irrelevant and points to a dictionary definition. Raymat argues that the definition of "process" does not call for any of the information required by the order for relief and that the Court "re-wrote" the settlement agreement.

Raymat is wrong. To be clear, neither party moved to admit nor did the undersigned judge admit at trial the Merriam-Webster online dictionary definition of "process" (TX 223) now tendered (earlier in the case, Raymat did reference dictionary definitions but the trial record is what counts). The parties will remember that the undersigned judge repeatedly reminded counsel during trial that they were responsible for making sure they offered the exhibits they wanted in the record into evidence. It is now too late to try to supplement the record. Based on the evidence actually in the trial record, the order for relief spelled out what Raymat had to do.

*Fourth*, Raymat accuses A&C Catalysts of "bad faith," "misrepresentation," and "perjury." Raymat also makes a series of unsupported statements and bald assertions of so-called "undisputed" facts. For example, Raymat writes (Br. 20) (emphasis added):

> Raymat's [Eleven-Page] Process Document is indeed a document showing step by step how Yantai manufactured LL. Lin at RT 219:14-239:21. ***Thus, Raymat has indeed delivered a document that allows A&C to duplicate what Yantai had done in China for the LL manufacturing process***.

This is flat-out wrong. Raymat also writes (Br. 18) (emphasis added):

> Thus, ***the undisputed evidence adduced at trial*** — without any need for resolving credibility — ***shows that the parties mutually contemplated Raymat's preexisting documentation, which could be delivered the next day, as the "documentation of that process,"*** and that the parties mutually understood that there would be missing details in that documentation, but they settled on the 8 hours of support time as the solution for the missing details.

Wrong again. These facts were not undisputed; in fact, the parties hotly contested these issues at trial.

If an appeal proceeds, counsel shall please be accurate in explaining to the court of appeals what was and was not found after a three-day bench trial and what was and was not actually in the trial record.

5

\*     \*     \*

Finally, please remember that a judgment is a powerful and important event in federal litigation. It brings all claims and defenses to a final conclusion and closes the door on the entirety of the litigation, subject only to a timely appeal. The need for repose and the need for the parties to be able to rely on finality counsel in favor of respect for a judgment and letting it be.

## CONCLUSION

For the reasons stated herein, Raymat's Rule 59(e) motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 26, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6