**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

A&C CATALYSTS, INC.,

    Plaintiff and Counter-Defendant,

v.

RAYMAT MATERIALS, INC.,

    Defendant and Counter-Plaintiff.

No. C 14-04122 WHA

**FURTHER CASE MANAGEMENT ORDER, ORDER RE RULE 706 EXPERT, AND REFERRAL TO MAGISTRATE JUDGE FOR MEDIATION**

    Seventeen pages of findings of fact and conclusions of law along with an order for relief following a three-day bench trial issued in December 2014. The order required Raymat Materials, Inc. to supply certain information to A&C Catalysts by January 2015, and to complete the teleconferencing support with Dr. Jibing Lin by February 2015 (Dkt. No. 111 at 15–16).

    In January 2015, Dr. Lin provided A&C Catalysts with five documents (Lin Decl. ¶ 3, Dkt. No. 129-1). A week later, A&C Catalysts provided Raymat with a long list of questions for the teleconference. The teleconference occurred on February 20, 2015. The parties recorded the teleconference by video and stenography.

    Now, A&C Catalysts contends that Dr. Lin was unable to provide the "complete manufacturing process, either by the documents drafted, or through the teleconference." "Production records from actual operations would fill in the gaps," it claims. A&C Catalysts also contends that (Dkt. No. 130):

> Dr. Lin also stated the following: (1) he does not know how, and by what equipment, Yantai combined the separate LL batches to make a complete lot; (2) he does not know the complete process

flow, or how the plant prevented cross contamination between materials, nor does he know the setup of certain manufacturing equipment used, e.g. the centrifuge, the screener, and protocol for material transport; (3) he does not know the derivation of the target and plant adjustments to maintain proper yield in production; (4) he does not know how the plant eliminated residual Trimethylbenzene—a toxic ingredient and known skin irritant (LL is a cosmetic ingredient applied to skin); (5) he was not involved in and did not witness or audit the Yantai plant's complete LL production after 2010, including during 2012 after Yantai altered the LL manufacturing process significantly.

Raymat responds that it fulfilled its duties and that A&C Catalysts should be ordered to pay the $150,000. Raymat contends that the order for relief did not call for some of the "eighty or so questions" on A&C Catalysts' list and that some of the questions A&C Catalysts asked during the teleconference were not within the scope of the written questions previously disclosed.

To help resolve this dispute over post-trial relief, the parties jointly propose two potential Rule 706 experts: (1) Dr. Edward Funk, located in Illinois, and (2) Dr. Eric Grulke, located in Kentucky. The further case management schedule shall be as follows:

1. By **MARCH 5 AT NOON**, A&C Catalysts shall file a list of its top seven grievances. The list shall not exceed one page. Each grievance must be one standalone sentence and a single point without any sub-items. Overbroad and/or non-compliant items may be quashed without replacement. A&C Catalysts shall also file a declaration appending (1) a copy of the teleconference transcript, highlighting and tagging the relevant passages, if any; (2) a copy of A&C Catalysts' written list of questions to Dr. Lin; and (3) all documents produced by Raymat and Dr. Lin pursuant to the order for relief, tagging the relevant pages, if any. A&C Catalysts may then file a brief (not to exceed twelve pages) explaining in detail each grievance. No additional attachments.

2. Raymat will then have until **MARCH 12 AT NOON**, to file a response (not to exceed twelve pages). No attachments and no replies, please.

3. Meanwhile, counsel for A&C Catalysts and counsel for Raymat shall please jointly contact Dr. Funk and Dr. Grulke (via joint letter or telephone) to obtain a written estimate of the cost for (1) reviewing the findings, conclusions, and order for relief (Dkt. No. 111); (2) reviewing A&C Catalysts' list of questions, the teleconference transcript, Raymat's eleven-page process

2

description, and all documents turned over pursuant to the order for relief; (3) reviewing the parties' briefing; and (4) drafting and filing an expert report. For each of A&C Catalysts' grievances, the expert's report would recommend whether or not the information provided by Raymat *substantially complied* with the order for relief and what information, if any, was substantially deficient. The Rule 706 expert, if appointed, may have additional responsibilities but for now, it will suffice to solicit this estimate. The written estimate should also include a copy of the individual's CV, the individual's hourly rate, and a timeline for when this task would be completed. No fees shall be charged for providing the estimate. To be clear, A&C Catalysts and Raymat would split the eventual cost of the Rule 706 expert fifty-fifty (with Raymat's share to come out of the $150,000, until, if ever, that became exhausted and then would come from Raymat directly), subject to potential readjustments if it turns out one side or the other was more at fault. Neither side may have communications with either candidate except as above.

4. By **MARCH 16 AT NOON**, the parties shall jointly file copies of the expert's estimates and timelines.

5. By **MARCH 16 AT NOON**, the parties shall get themselves on Magistrate Judge Ryu's calendar for an in-person mediation. Within **TWO CALENDAR DAYS** of the conclusion of the mediation, the parties shall jointly file a status statement (not to exceed five pages total) stating what grievances (identify the grievance number from the list of grievances), if any, remain.

**IT IS SO ORDERED.**

Dated:  February 26, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3